# EXHIBIT A

Electronically
FILED
by Superior Court of California, County of San Mateo
ON 1/3/2024
By /s/ Anthony Berini
Deputy Clerk

ROBERT C. SCHUBERT (No. 62684)
(rschubert@sjk.law)
AMBER L. SCHUBERT (No. 278696)
(aschubert@sjk.law)
**SCHUBERT JONCKHEER & KOLBE LLP**
2001 Union Street, Suite 200
San Francisco, California 94123
Telephone: (415) 788-4220
Facsimile: (415) 788-0161

*Counsel for Plaintiffs*

SUPERIOR COURT OF THE STATE OF CALIFORNIA

FOR THE COUNTY OF SAN MATEO

| | |
|---|---|
| ALISON WISDOM, JEFFREY WISDOM, and MICHELLE SHELTON, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiffs,<br><br>v.<br><br>WAG HOTELS, INC.,<br><br>Defendant. | Case No. 24-CIV-00040<br><br>**CLASS ACTION COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |



SCHUBERT JONCKHEER & KOLBE LLP
2001 Union Street, Suite 200
San Francisco, CA 94123
(415) 788-4220

Alison Wisdom, Jeffrey Wisdom, and Michelle Shelton ("Plaintiffs") bring this consumer class action against Wag Hotels, Inc. (the "Defendant," or the "company," or "Wag") for deceptive advertising and negligence. Plaintiffs' allegations are based upon personal knowledge as to their own acts and upon their investigation, the investigation of counsel, and information and belief as to all other matters. Plaintiffs, on behalf of themselves and all others similarly situated, allege:

SCHUBERT JONCKHEER & KOLBE LLP
2001 Union Street, Suite 200
San Francisco, CA 94123
(415) 788-4220

**SUMMARY OF ACTION**

1. Pet owners place tremendous trust and faith in commercial animal boarding facilities to adequately care for their beloved pets. In fact, legislators throughout California have resonated with this sentiment and implemented numerous statutes and local ordinances that impose obligations on kennels and catteries to maintain safe, clean, and livable environments for customers' pets. In other words, animal boarding facilities must maintain *humane* conditions for pets.

2. However, when animal boarding facilities prioritize profits over pet welfare and fail to comply with commonsense and legislative requirements to provide safe and humane boarding conditions, tragic outcomes can ensue.

3. Wag Hotels—which purports to provide "premium" boarding, daycare, and grooming services to dogs and cats at premium prices—is one such company that failed to maintain a safe, clean, and habitable environment for customers' pets. Wag's negligence and misconduct caused at least dozens of pets to contract life-threatening infections and other serious health conditions. In some cases, these conditions have caused pets to experience lingering, lifelong health issues.

4. The company's systematic, pervasive, and longstanding neglect for its customers' pets was disclosed to the public on August 15, 2023, when the *San Francisco Chronicle* published findings from its in-depth investigation of the company's practices in an article titled *"Filthy pets. An amputated leg. Inside alleged 'absolute neglect' at Wag Hotels"*[1] (the "Chronicle Article"). The

---

[1] Melissa Newcomb, *Filthy pets. An amputated leg. Inside alleged 'absolute neglect' at Wag Hotels,* SAN FRANCISCO CHRONICLE (Aug. 15, 2023), https://www.sfchronicle.com/sf/article/wag-luxury-pet-hotel-17769312.php.

SCHUBERT JONCKHEER & KOLBE LLP
2001 Union Street, Suite 200
San Francisco, CA 94123
(415) 788-4220

article detailed horrific conditions that have plagued Wag's California facilities for years. Importantly, many of the allegations were corroborated by current and former Wag employees.

5. Among the allegations included in the Chronicle Article were instances of overcrowded group play areas tainted by urine, feces, and blood; pets being left to starve or not being fed until hours after their scheduled feeding time; a failure to sanitize or clean kennels and group play areas on a consistent basis; medical neglect by staff members when pets displayed clear signs of pain or discomfort; understaffed facilities; and Wag's common practice of hiring untrained staff members who had little to no experience in animal care.

6. Plaintiffs Wisdoms' dog, Paige, was the victim of Wag's neglect, including many of the conditions described above. During a nine-day stay at Wag's Redwood City facility in September 2021, Paige contracted a flesh-eating bacterial infection known as *necrotizing fasciitis*, which spread rapidly and required immediate treatment. Plaintiffs believe that the infection was caused by the unsanitary conditions at Wag's boarding facility. Due to the infection, Paige was eventually forced to undergo surgery to amputate one of her legs. Paige is pictured below:



SCHUBERT JONCKHEER & KOLBE LLP
2001 Union Street, Suite 200
San Francisco, CA 94123
(415) 788-4220

7. She has since recovered from her surgery and continues to be a source of joy to her owners, but Paige and her owners must face the tough reality of managing the lingering health issues connected to her amputation.

8. Plaintiff Shelton's dog, Mercedes, was also the victim of Wag's neglect. Following a recent stay at Wag's South Bay/Carson facility in September 2023, Plaintiff Shelton discovered that Mercedes was scratching herself an unusual amount and had open sores throughout her body that were not present prior to boarding her at Wag. Additionally, despite paying for a suite, which included access to a live video stream of Mercedes at Wag during her stay, Mercedes was placed in a room without a camera, and Plaintiff Shelton was not provided access to any live stream. Plaintiff Shelton could therefore not determine how Mercedes was treated during her stay.

9. Importantly, Paige, Mercedes, and their owners were hardly alone in their experiences. The Chronicle Article references several tragic and heartbreaking stories from pet owners whose trust in Wag's services and staff quickly turned to shock and anger when their pets returned from Wag's care with bruises, cuts, infections, urine and feces-covered bodies, and other serious health conditions.

10. The sheer number of complaints from Wag customers and employees throughout the years indicates that these instances of neglect and abuse are not one-off occurrences. Rather, they are the product of systemic issues related to Wag's lax and negligent policies and practices.

11. Based on the alarming allegations noted above, the San Francisco Animal Care & Control, the City's animal welfare authority, initiated an investigation into the company's San Francisco facility. The agency confirmed to news outlets that it conducted an inspection of Wag's San Francisco premises. Upon information and belief, the agency's investigation is ongoing.

12. Plaintiffs bring their claims individually and on behalf of a California Class of consumers who used Wag's services. As evidenced by the allegations in this complaint, Defendant has committed negligence and violated California's consumer protection and false advertising laws, including the False Advertising Law (Bus. & Prof. Code §§ 17500 *et seq*.), the Unfair Competition Law (Cal. Bus. & Prof. Code §§ 17200 *et seq*.), and the Consumers Legal Remedies Act (Civ. Code §§ 1750 *et seq*.), by failing to implement procedures, policies, and other oversight

mechanisms to ensure the well-being of customers' pets and intentionally utilizing deceptive trade practices and false and misleading claims to sell its services.

**PLAINTIFFS**

13. Plaintiff Alison Wisdom is a citizen of California and a resident of Chino, California.

14. Plaintiff Jeffrey Wisdom is a citizen of California and a resident of Chino, California.

15. Plaintiff Michelle Shelton is a citizen of California and a resident of Long Beach, California.

16. Alison and Jeffrey's Labrador, Paige, stayed at Wag's Redwood City facility for nine days between September 12, 2021 and September 20, 2021. While there, Paige contracted a life-threatening bacterial infection known as *necrotizing fasciitis* and was eventually forced to undergo a surgery to amputate one of her legs.

17. On September 20, 2021, Alison and Jeffrey received a text and several voicemails from employees at Wag's Redwood City facility informing them that Paige was displaying a strong limp, and Wag was going to schedule an emergency appointment with a veterinary provider. In a voicemail, Wag stated that Paige was lethargic, a major red flag.

18. That same day, Wag took Paige to a veterinary clinic but only had a technician observe Paige in the lobby of the facility, instead of waiting to see a veterinarian. The technician observed that Paige was suffering from a swollen right hind paw that appeared to be getting progressively worse. Paige was scheduled for a more comprehensive appointment the next day.

19. When Alison and Jeffrey picked up Paige from Wag's Redwood City facility later that evening, it was clear that Paige's condition was worsening: her paw was massively swollen and she had a fever.

20. The next day, Alison and Jeffrey took Paige to see a vet at their local urgent care facility. There, the vets at the facility conducted testing on cultures extracted from Paige's paw and determined that Paige was suffering from a bacterial infection resulting in *necrotizing fasciitis*. The culture showed six different strains of bacteria.

SCHUBERT JONCKHEER & KOLBE LLP
2001 Union Street, Suite 200
San Francisco, CA 94123
(415) 788-4220

SCHUBERT JONCKHEER & KOLBE LLP
2001 Union Street, Suite 200
San Francisco, CA 94123
(415) 788-4220

21. Over the next few days, Paige's condition continued to decline. Despite aggressive efforts to combat the infection, it continued to spread. Paige's bacterial infection is depicted below:



22. On September 24, 2021, Alison and Jeffrey were told that Paige's infected paw was no longer viable and it was recommended that she undergo an amputation of her entire right hind leg in order to stem the infection. After careful consideration, Alison and Jeffrey decided to comply with the vet's recommendation. Paige's right hind leg was amputated on September 24, 2021.

23. After the amputation, Paige remained in the ICU for several days as her health remained in a precarious state. After she was discharged from the ICU, Paige continued to require intensive supervisory care.

24. Alison and Jeffrey incurred over $30,000 in medical bills as a result of the bacterial infection that Paige contracted during her stay at Wag.

SCHUBERT JONCKHEER & KOLBE LLP
2001 Union Street, Suite 200
San Francisco, CA 94123
(415) 788-4220

25. Soon after Paige's surgery, Alison and Jeffrey reached out to Wag to alert the company about the conditions at its facility that caused Paige's sudden bacterial infection and to request more information on Wag's operations. As part of their communications to Wag, Alison and Jeffrey asked Wag to disclose its policies and procedures concerning sanitation, staffing, recordkeeping, and general pet welfare. Wag refused to provide substantive responses to Alison and Jeffrey's questions.

26. In selecting boarding facilities, Alison and Jeffrey relied on Wag's representations assuring customers of its dedication to hygiene, safety, and pet welfare. Alison and Jeffrey trusted Wag to take care of Paige and were ultimately misled and harmed by Wag's representations.

27. Plaintiff Michelle Shelton's Terrier Chihuahua Mix, Mercedes, stayed at Wag's South Bay/Carson facility for 4 days between September 1, 2023 and September 4, 2023. Immediately following Mercedes's stay, Shelton discovered that Mercedes was scratching herself an unusual amount and had open sores throughout her body that were not present prior to boarding her at Wag. Mercedes's skin irritation and flea bites from her stay at Wag are shown below:





SCHUBERT JONCKHEER & KOLBE LLP
2001 Union Street, Suite 200
San Francisco, CA 94123
(415) 788-4220

28. Additionally, even though Shelton paid Wag for a suite, which included claimed to provide access to a live video stream of Mercedes during her stay, Wag initially placed Mercedes in a room without a camera. Despite repeated attempts, Mercedes was not placed in a room with a camera until following day. During that time, Shelton could therefore not determine how Mercedes was treated while at Wag.

29. In selecting boarding facilities, Shelton relied on Wag's representations assuring customers of its dedication to hygiene, safety, and pet welfare. Shelton trusted Wag to take care of Mercedes and was ultimately misled and harmed by Wag's representations.

**DEFENDANT**

30. Defendant Wag Hotels, Inc. is a Delaware corporation with its headquarters located at 1759 Enterprise Boulevard, West Sacramento, CA 95691.

31. Wag offers premium boarding, daycare, and grooming services for cats and dogs. The company owns and operates nine facilities in the following cities throughout California: Oakland, Redwood City, Sacramento, San Francisco, Santa Clara, Hollywood, San Diego, Carson, and Santa Monica.

**JURISDICTION AND VENUE**

32. This Court has original jurisdiction over this action pursuant to Cal. Civ. Proc. Code § 410.10 because Defendant has sufficient minimum contacts with California and/or Defendant otherwise purposely avails itself of the markets in California. The acts at issue in this complaint occurred in California, Plaintiffs are citizens of California, and Defendant conducts substantial business, including the promotion, marketing, and sale of its services in California and is headquartered in California. These acts render the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

33. Venue is proper in County of San Mateo pursuant to Cal. Civ. Proc. Code § 1780(d) because the transactions or a substantial portion thereof occurred in the County of San Mateo. Venue is also proper pursuant to Cal. Civ. Proc. Code § 395.5 because the contracts were made or the obligations and liability arose in the County of San Mateo.

SCHUBERT JONCKHEER & KOLBE LLP
2001 Union Street, Suite 200
San Francisco, CA 94123
(415) 788-4220

## RELEVANT FACTUAL ALLEGATIONS

### A. Wag markets itself as a premium luxury pet care service dedicated to providing an attentive, clean, and safe environment for pets.

34. Wag describes itself as the "ultimate stay and play resort" that offers "luxury boarding accommodations" along with grooming and behavioral training services. It also charges premium prices.

35. Customers who use the company's boarding services can opt for various lodging options ranging from small private rooms to more luxurious "suites."

36. The company understands the importance of creating a safe, attentive, and clean environment for customers' pets, as evidenced by representations displayed throughout its website that uplift the company's claimed dedication to pet welfare.

37. Wag repeatedly assures customers of its dedication to providing a safe and clean environment for pets. For example, customers are greeted with the following representations on the homepage of Wag's website: "SAFETY, CLEANLIENESS & FUN ARE ALWAYS #1[,]" and the company assures customers that its facilities are "[b]uilt with safety, comfort, and cleanliness in mind[.]"[2]

38. Wag markets its facilities as the "ultimate in fun, safety, and convenience for cats and dogs." On the webpages for each of its facilities, Wag represents that its facilities are safe and clean for pets and that the company prioritizes pets' health, safety, and comfort. For example, the Redwood City facility purports to prioritize pets' "health, safety, and comfort"; to adhere to "industry-leading sanitation procedures"; and to offer "regular room refreshing and cleaning" for pets who stay in private boarding facilities.[3]

---

[2] *See* https://www.waghotels.com.

[3] *See* https://www.waghotels.com/oakland/boarding/; https://www.waghotels.com/sacramento/boarding/; https://www.waghotels.com/san-francisco/boarding/; https://www.waghotels.com/santa-clara/boarding/; https://www.waghotels.com/hollywood/boarding/; https://www.waghotels.com/san-diego/boarding/; https://www.waghotels.com/south-bay-carson/boarding/; https://www.waghotels.com/santa-monica/boarding/.

SCHUBERT JONCKHEER & KOLBE LLP
2001 Union Street, Suite 200
San Francisco, CA 94123
(415) 788-4220

39. Furthermore, Wag further represents that its facilities are well-staffed to provide 24/7 care to customers' pets, which is a comforting and appealing perk for anxious pet owners.

40. For example, Wag's homepage touts that it offers "PET CARE YOU CAN COUNT ON" and boasts that its facilities are "staffed 24/7" and that "you can always count on us to be there when you need us."[4]

41. Additional representations assuring customers of competent 24/7 staffing are included throughout the company's facility-specific webpages. For example, the webpage for the Oakland facility boasts "[o]ur staff is on site 24/7/365 making sure each pet gets the love and attention they deserve."[5] Identical or substantially similar representations touting the company's dedication to well-staffed and competently staffed facilities are featured on the webpages for the eight additional Wag facilities throughout California.[6]

42. Moreover, customers paying for private suites are assured that they will have access to a 24/7 livestream connected to their pet's suite, which gives customers comfort in knowing that they can check-in on their pets at any time. Customers are further assured that they will have daytime access to the "WagCam," which is a livestream connected to the facilities' group play areas.

43. Customers choose to entrust Wag to take care of their pets based on the representations described above that convey to consumers that Wag will provide a safe and clean luxury lodging and daycare experience for their pets.

**B. Contrary to Wag's representations, the company has not prioritized pet welfare.**

44. Over the years, reports have emerged that, contrary to Wag's purported dedication to pet welfare, the company's nine California facilities are plagued by rampant neglect and abuse.

[4] *See* https://www.waghotels.com.

[5] https://www.waghotels.com/oakland/.

[6] *See* https://www.waghotels.com/redwood-city/; https://www.waghotels.com/sacramento/; https://www.waghotels.com/san-francisco/; https://www.waghotels.com/hollywood/; https://www.waghotels.com/san-diego/; https://www.waghotels.com/south-bay-carson/; https://www.waghotels.com/santa-monica/.

SCHUBERT JONCKHEER & KOLBE LLP
2001 Union Street, Suite 200
San Francisco, CA 94123
(415) 788-4220

45. According to the findings published in the Chronicle Article, Wag's facilities are egregiously unclean and unsanitary. Several pet owners stated that their dogs smelled like urine and feces when they picked them up from Wag's care. A former employee from the company's San Francisco facility disclosed that managers would often ask staff members to bathe customers' pets before returning them to their owners to rid the pets of the dirt and filth picked up from the group play areas. Other former employees from the San Francisco facility stated that "[d]ogs will be basically laying in pee all the time" and noted that they frequently saw rodents in the facility. A former employee of the Oakland facility described frequent instances of gnats swarming the sewage pipes. Furthermore, a photo from Wag's Redwood City location displayed a bowl of cat food that had become moldy.

46. Moreover, individual kennels, promoted as "rooms" and "suites," presented serious sanitation concerns. Current and former employees reported that staff would not clean excrement for hours and animals could be found lying in or consuming it.

47. Wag's failure to provide a clean and safe environment for customers' pets is connected to the company's staffing issues.

48. Wag facilities are understaffed and staffed by employees with little to no experience with animal welfare. Of the twenty-nine current and former employees contacted as part of the *San Francisco Chronicle*'s investigation, many of these individuals confirmed that they were hired with little to no experience in animal welfare and were provided inadequate training after joining the company.

49. Current and former employees have stated that the boarding facilities were understaffed to the point that providing a safe and sanitary experience for customers' pets was nearly impossible. In fact, a former employee from the San Francisco facility flagged the concerning lack of oversight in the facility's group play areas and noted that just one staff member was often responsible for the welfare of more than fifty dogs.

50. Reviews from former and current employees featured on Wag's 'Glassdoor' page corroborate the narrative that the company's facilities were grossly understaffed. For example, a former Guest Services employee at the Santa Clara facility wrote that the facility had "dangerously

SCHUBERT JONCKHEER & KOLBE LLP
2001 Union Street, Suite 200
San Francisco, CA 94123
(415) 788-4220

large play group sizes for 1 handler[.]" A former Pet Hotel Associate from the company's Los Angeles facility wrote "[t]oo many dogs in the playroom for one person to take care of." A former Client Service Representative at Wag's Oakland facility wrote "[t]hey are also usually understaffed, and new hires typically do not stay long."

51. The company's failures to properly staff its facilities; to hire adequately experienced employees or train new hires; and to oversee the hygiene of its facilities collectively created the circumstances that caused customers' pets to experience abuse and neglect.

52. For example, pets were left to starve or fed well past their scheduled feeding times. One customer from the San Francisco facility kept tabs on her dog through Wag's livestream service and saw her dog crying out for food for hours. Her dog was eventually fed 2-3 hours past his scheduled feeding time.

53. Another customer at the company's Oakland facility provided a bag full of food for her dog when she dropped off her pet. When she returned to pick up her dog later that day, staff members informed her that they had lost the bag containing the food. The bag was eventually found, and the food was untouched. The staff members admitted that they had no records confirming that her dog had been fed.

54. Several former and current employees interviewed by Chronicle journalists confirmed that Wag's facilities were so understaffed and overworked that it was not uncommon for employees to miss providing meals and medications.

55. Moreover, the unsanitary and unsafe conditions caused several pets to develop injuries and health conditions, but staff members were not able to give these pets the necessary care and attention they deserved.

56. A customer using Wag's Hollywood facility stated that when he picked up his bulldog, Brutus, he noticed that Brutus could barely walk because his foot pads had been badly damaged. Brutus's injury took weeks to heal, and his owner spent hundreds of dollars in vet bills. Believing that this might be a one-off occurrence, Brutus's owner took him back to the Hollywood facility nearly a year later, and Brutus once again returned from the company's care with damaged foot pads.

SCHUBERT JONCKHEER & KOLBE LLP
2001 Union Street, Suite 200
San Francisco, CA 94123
(415) 788-4220

57. Another customer stated that staff members at the San Francisco facility forgot to remove her dog's back brace, even though she had instructed them to do so, and the brace had sliced the dog's skin and created painful wounds.

58. Plaintiffs Wisdoms' dog, Paige, contracted a serious bacterial infection from the unsanitary conditions at the Redwood City facility and was eventually forced to amputate one of her legs. Plaintiff Shelton's dog, Mercedes, developed open sores throughout her body from the conditions at Wag's South Bay/Carson facility.

59. Defendant's failures even caused injury to staff members. On June 13, 2019, a pit bull mauled and attacked four employees at the company's Santa Clara facility. A former employee who was injured in the incident, Taylor Soetje, stated that she walked into a play area to the sight of a pit bull dragging another employee by her ankle. Soetje disclosed that she had never received proper training on how to handle such situations and decided to grab the attacking dog by its hind legs. The dog then attacked her and proceeded to attack two other employees who tried to help.

60. Importantly, when Soetje returned to work months later, she was disappointed to find that Wag had not implemented any significant policy changes or safety protocols to prevent similar traumatic incidents in the future.

61. As alleged above, Wag misrepresented its dedication to pet welfare. Indeed, the company's failure to prioritize pet welfare caused grave harm to many customers' pets.

**C. The problems with pet welfare at Wag are even worse than publicly known.**

62. Based on Plaintiffs' counsel investigation into the neglect and abuse occurring at Wag's facilities in California, Plaintiffs, on information and belief, further allege that Wag's problems with pet welfare may be even worse than publicly known.

63. Current and former employees at Wag's facilities have revealed that:

a) Many pets do not receive blankets and are left in their kennels with no bedding to sleep on, even though customers paid for these blankets.

SCHUBERT JONCKHEER & KOLBE LLP
2001 Union Street, Suite 200
San Francisco, CA 94123
(415) 788-4220

b) Many pets are frequently served the wrong food or the wrong amount of food, and there is no system to record if and when pets are fed. This neglect results in uneaten food and significant dietary problems.

c) Wag's facilities are chronically understaffed. Wag generally has only 1-2 staff members overseeing approximately 60 to 200 pets (and sometimes as many as 300 pets during the holidays). Because of this inadequate staffing, pets' "rooms" and "suites" are frequently not cleaned by staff, resulting in unsanitary living conditions, including kennels being flooded with animal waste.

d) Training for Wag staff is wholly inadequate. Training is primarily conducted through online videos, with one day of on-the-job training at most. These videos do not adequately prepare employees for properly caring for pet welfare.

e) Managers frequently ignore the concerns of Wag's staff about inadequate conditions, staffing, and training. Wag has failed to properly investigate the claims raised by its employees, customers, and the general public.

**D. Wag's corporate leaders had notice of the neglect and abuse at its California facilities for years but failed to act.**

64. Wag's management knew or should have known of the rampant animal abuse and neglect at the company's California facilities.

65. First and foremost, the company has been hit with administrative fines and legal actions related to its labor practices and workplace conditions.

66. In response to the traumatic dog mauling attack described above at the company's Santa Clara facility, OSHA fined Wag Hotels $18,000 for a "serious" violation of safety standards.

67. Moreover, documents shared with Chronicle journalists reveal that Wag had been involved in several suits involving workers compensation violations and labor law violations. In recent years, Wag has reached settlements with its employees concerning allegations of improper meal and rest periods, uncompensated off-the-clock work, and the denial of mandatory breaks for those with disabilities.

SCHUBERT JONCKHEER & KOLBE LLP
2001 Union Street, Suite 200
San Francisco, CA 94123
(415) 788-4220

68. Former managers and directors have raised red flags concerning the company's staffing issues for years, but the company's leaders have refused to address these issues for financial reasons.

69. In fact, eight of the current and former employees interviewed by the Chronicle revealed that they had asked company leadership to implement changes to ensure the welfare of customers' pets, but management was not receptive to these ideas. Kris Kates, a former director of behavior and training for Wag between 2013 and 2017 described several conversations over the years with Wag's corporate leaders about improving new hire trainings and ensuring that the company's facilities were adequately staffed. Kates eventually raised these issues with Michael Griggs, Wag's COO, but he told her that her proposed changes were too costly for the business.

70. Similarly, Aubrey Sanders, the former head of training at the Oakland facility, said that months before the dog-mauling incident at the Santa Clara facility, she had proposed to Griggs training programs that would address the prevention and de-escalation of fights between dogs. However, like Kates, she was told that such trainings were a waste of time and money.

71. Moreover, on information and belief, Wag employees actively monitored online feedback websites, such as Google review and Yelp, which included a number of health and safety-related complaints concerning their facilities that were raised by customers. Wag also offered inducements to customers who posted negative reviews to improve their reviews, providing further evidence that Wag understood that the conditions at their facilities were inadequate, unsanitary, and unsafe.

72. The allegations described above illustrate that Wag's leaders had notice of the egregious conditions within the company's California facilities, but ultimately decided to prioritize the profitability of the company over pet welfare.

**E. Wag's conduct is inconsistent with the standards set forth in state and local laws governing the conditions at animal boarding facilities.**

73. The standards and conditions required to operate commercial pet boarding facilities are outlined in several state and local laws. Wag's conduct, as alleged above, is inconsistent with the standards set forth in these laws.

SCHUBERT JONCKHEER & KOLBE LLP
2001 Union Street, Suite 200
San Francisco, CA 94123
(415) 788-4220

74. For example, Chapter 11 of the California Health & Safety Code[7] governs "Pet Boarding Facilities," and imposes the following requirements on Wag and other pet boarding facilities:

- "pests do not inhabit any part of the pet boarding facility in a number large enough to be harmful, threatening, or annoying to the pets." Cal. Health Civ. Code § 122381(b).

- "pet boarding facility's interior building surfaces, including walls and floors, are constructed in a manner that permits them to be readily cleaned and sanitized." Cal. Health Civ. Code § 122381(e).

- "separating the grooming work area from the pet boarding facility's permanent or fixed and temporary enclosures and ensuring that the grooming areas are cleaned and sanitized at least once daily." Cal. Health Civ. Code § 122381(g).

75. The California Health & Safety Code also imposes additional requirements on "permanent or fixed enclosures,"[8] like the "rooms" and "suites" offered by Wag. The statute requires that these structures:

- "[b]e maintained in good repair to protect the enclosed pet from injury, to contain the pet, to keep other animals out, and to promote the health and well-being of the pet." Cal. Health Civ. Code § 122382(a)(1).

- "[b]e maintained in a comfortable and sanitary manner. When being cleaned in a manner or with a substance that is or may be harmful to a pet within the enclosure, that pet shall be removed from the enclosure." Cal. Health Civ. Code § 122382(a)(1).

- "[b]e constructed of material suitable for regular cleaning and sanitizing." Cal. Health Civ. Code § 122382(a)(3).

[7] Cal. Health Civ. Code § 122380—122388.

[8] The statute defines "permanent or fixed enclosures" as a "structure, including, but not limited to, an exercise run, kennel, or room, used to restrict a pet, that provides for the effective separation of a pet from the pet's waste products."

76. Furthermore, several California counties in which Wag facilities are located have implemented ordinances reaffirming the California Health & Safety Code or imposing additional pet welfare standards.[9]

77. San Mateo County, which houses Wag's Redwood City facility, enacted an ordinance governing the requirements for "kennel" and "cattery" permits. The ordinance covers large commercial boarding operations, like Wag.[10] According to the statute, a kennel or cattery permit may be approved only if the following criteria are met:

- "[t]hat facilities exist at the proposed location to safely and adequately secure, feed, house, exercise and maintain the animals." § 6.20.060(a)(1).
- "[t]hat possession and maintenance of the animals at the proposed location will not result in the animals being subject to discomfort, neglect, suffering, cruelty, or abuse." § 6.20.060(a)(4).
- "[t]hat the permit holder agrees to make every effort to keep all animals free of disease and parasites and provide adequate veterinary care as needed." § 6.20.060(a)(5).
- "[t]hat the keeping of the animals at the facility will not violate any federal, state or local law." § 6.20.060 (a)(7).

78. Wag's conduct is inconsistent with the pet welfare standards set forth by state and local authorities for persons or entities operating commercial boarding facilities.

**CLASS ACTION ALLEGATIONS**

79. Plaintiffs bring this action as a class action pursuant to Cal. Civ. Proc. Code § 1781 and Cal. Civ. Proc. Code § 382 on behalf of themselves and a proposed Class defined as follows:

---

[9] *See* Los Angeles County, California, Municipal Code § 10.40.010 (imposing numerous sanitation, safety, and welfare related requirements on persons who operate "animal facilities" and noting that the violations of these standards could constitute a misdemeanor); Santa Clara County, California, Municipal Code § 6.35.030 (imposing numerous sanitation, safety, and welfare related requirements on "animal facilities"); Sacramento County, California, Municipal Code § 8.26.075 ("[t]he Chief of Animal Control shall, with the approval of the Director, set minimum standards for the proper care and maintenance both of a kennel or cattery or a place of keeping of wild animals and of the animals kept therein which are, at a minimum, consistent with applicable State and Federal standards."); Alameda County, California, Municipal Code § 5.24.120 ("Every dog kennel shall be maintained in a manner satisfactory to the county health officer.").

[10] Regulations for Kennels/Catteries, County Ordinance Code Title 6 Animals Chapter 6.20 Kennels/Catteries, https://www.smcgov.org/media/73256/download?inline=.

SCHUBERT JONCKHEER & KOLBE LLP
2001 Union Street, Suite 200
San Francisco, CA 94123
(415) 788-4220

SCHUBERT JONCKHEER & KOLBE LLP
2001 Union Street, Suite 200
San Francisco, CA 94123
(415) 788-4220

**All persons who used Wag's services within the State of California within the last four years (the "Class").**

80. Excluded from the Class are governmental entities, Defendant, any entity in which Defendant has a controlling interest, and Defendant's officers, directors, affiliates, legal representatives, employees, coconspirators, successors, subsidiaries, and assigns. Also excluded from the Class are any judges, justices, or judicial officers presiding over this matter and the members of their immediate families and judicial staff.

81. This action is brought and may be properly maintained as a class action pursuant to Cal. Civ. Proc. Code § 1781 and Cal. Civ. Proc. Code § 382.

82. Numerosity. The Class is so numerous that the individual joinder of all members is impracticable, and the disposition of the claims of all Class members in a single action will provide substantial benefits to the parties and the Court. Plaintiffs, on information and belief, allege that the Class includes at least thousands of persons.

83. Commonality. Common legal and factual questions exist that predominate over any questions affecting only individual Class members. These common questions, which do not vary among Class members and which may be determined without reference to any member's individual circumstances, include, but are not limited to:

a) Whether Wag owed a duty of care to its customers and their pets;

b) Whether Wag breached its duty of care to its customers by failing to implement policies and procedures to ensure the welfare of customers' pets;

c) Whether Wag had knowledge of the abuse and neglect at its California facilities;

d) Whether Wag's representations and omissions in its advertising are false, deceptive, and misleading;

e) Whether Wag had knowledge that its representations and omissions in its advertising were false, deceptive, and misleading;

f) Whether Wag's representations and omissions in its advertising are likely to deceive a reasonable consumer;

g) Whether Wag knew or should have known that reasonable consumers rely on its representations concerning safety and general pet welfare to purchase its services;

h) Whether Wag engaged in unlawful, fraudulent, or unfair business practices;

i) Whether Wag's conduct violated the applicable California consumer protection laws alleged herein;

j) Whether Wag is subject to liability for violating the California False Advertising Law ("FAL") Cal. Bus. & Prof. Code §§ 17500 *et seq.*;

k) Whether Wag has violated the Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200 *et seq.*;

l) Whether Wag is subject to liability for violating the Consumer Legal Remedies Act ("CLRA"), Cal. Civ. Code §§ 1750 *et seq.*;

m) Whether Plaintiffs and Class members are entitled to restitution and damages;

n) Whether Plaintiffs and Class members and are entitled to declaratory and injunctive relief.

84. <u>Typicality.</u> Plaintiffs' claims are typical of the Class members' claims. As a result of Wag's misconduct and neglect at its California facilities, Wag's conduct exposed Plaintiffs and the Class members to the same harm or risk of future harm. Likewise, Plaintiffs and other Class members must prove the same facts—Wag's unlawful conduct at its California facilities—in order to establish the same claims.

85. <u>Adequacy.</u> Plaintiffs are adequate Class representatives because they are member of the Class, and their interests do not conflict with the interests of the Class. Plaintiffs have retained counsel competent and experienced in complex litigation and consumer protection class action matters such as this action, and Plaintiffs and their counsel intend to prosecute this action for the benefit of the Class and have the resources to do so. Plaintiffs and their counsel have no interests adverse to those of the other members of the Class.

SCHUBERT JONCKHEER & KOLBE LLP
2001 Union Street, Suite 200
San Francisco, CA 94123
(415) 788-4220

SCHUBERT JONCKHEER & KOLBE LLP
2001 Union Street, Suite 200
San Francisco, CA 94123
(415) 788-4220

86. Predominance and Superiority. The Class can be properly maintained because the above common questions of law and fact predominate over any questions affecting individual Class members. A class action is also superior to all other available methods for the fair and efficient adjudication of this controversy because individual litigation of each Class member's claim is impracticable. Even if each Class member could afford individual litigation, the court system could not. It would be unduly burdensome if thousands of individual cases proceeded. Individual litigation also presents the potential for inconsistent or contradictory judgments, the prospect of a race to the courthouse, and the risk of an inequitable allocation of recovery among those individuals with equally meritorious claims. It would increase the expense and delay to all parties and the Courts because it requires individual resolution of common legal and factual questions. By contrast, the class action device presents far fewer management difficulties and provides the benefit of a single adjudication, economies of scale, and comprehensive supervision by a single court.

**FIRST CLAIM FOR RELIEF**
**Negligence**
***On Behalf of Plaintiffs and the Class***

87. Plaintiffs, individually and on behalf of the Class, incorporate by reference all the allegations contained in the preceding paragraphs of this Class Action Complaint as if fully set forth herein. Plaintiffs bring this claim individually and on behalf of the Class against Wag.

88. By accepting the obligation to care for and oversee the welfare of Plaintiffs' and the Class members' pets, Wag assumed a duty requiring it to use reasonable, and, at the very least, industry-standard care to ensure the safety and well-being of customers' pets. This duty included, *inter alia*, maintaining a clean and sanitized environment for pets; ensuring that its facilities were adequately staffed; providing adequate training to staff members on proper techniques for animal care; creating an environment free of safety and health hazards.

89. Wag's duty of care also arose by statute and local regulations, including, as alleged herein, violations of California's health code for pet boarding facilities (Cal. Health Civ. Code § 122380—122388) and violations of local health and safety ordinances in the cities and counties in

SCHUBERT JONCKHEER & KOLBE LLP
2001 Union Street, Suite 200
San Francisco, CA 94123
(415) 788-4220

which Wag operates its facilities. These state statutes and local ordinances were enacted to protect Plaintiffs' and Class members' pets from the type of conduct engaged in by Wag.

90. Wag breached its duty to exercise reasonable care in overseeing and providing for Plaintiffs' and the Class members' pets by failing to implement the policies, procedures, and general oversight measures required to ensure the safety and well-being of customers' pets. Wag breached its duty by maintaining facilities that were unsanitary, understaffed, and under resourced. Wag's conduct created a foreseeable and unreasonable risk of harm to Plaintiffs' and Class members' pets (and injury and damages to their owners).

91. As a direct and proximate result of Wag's failure to take reasonable care and use, at a minimum, industry-standard measures to take care of and ensure the well-being of the pets in its care, Plaintiffs and the Class members' experienced harm in the form of out-of-pocket medical expenses for their pets and the overpayment of services based on Wag's misrepresentations.

92. Wag's negligence was gross, willful, wanton, and warrants the imposition of punitive damages given the clear foreseeability of the severe physical and psychological harm to pets, the substantial injury to the pets' owners, and its failure to take remedial actions.

93. Plaintiffs and Class members are entitled to compensatory and punitive damages, as well as injunctive relief to remedy Wag's ongoing neglect and abuse.

**SECOND CLAIM FOR RELIEF**
**Violation of the "Unfair" Prong of the California Unfair Competition Law**
**Cal. Bus. & Prof. Code §§ 17200 *et seq.***
***On Behalf of Plaintiffs and the Class***

94. Plaintiffs, individually and on behalf of the Class, incorporate by reference all the allegations contained in the preceding paragraphs of this Class Action Complaint as if fully set forth herein. Plaintiffs bring this claim individually and on behalf of the Class against Wag. Wag's conduct as alleged in this complaint comprises unfair conduct within the meaning of the California Unfair Competition Law.

95. The UCL is a California statute that protects consumers against unlawful, unfair, misleading, and fraudulent business and advertising practices.

96. Wag's actions as alleged in this complaint constitute "unfair" conduct within the definition, meaning, and construction of California Business and Professions Code Sections 17200 *et seq.* Wag's business practices, as alleged herein, are "unfair" because they subject pets to immoral, unethical, and oppressive conditions that cause substantial injuries to Plaintiffs and Class members.

97. Wag's "unfair" business practices include:

a) Creating conditions that caused customers' pets to contract serious medical illnesses and life-threatening health conditions;

b) Maintaining extremely unsanitary and unsafe conditions for consumers' pets;

c) Maintaining boarding facilities that were grossly understaffed and thus unable to provide proper care to customers' pets;

d) Failing to provide adequate training to employees concerning animal behavior and animal care;

e) Maintaining the above-mentioned unsanitary and unsafe conditions at its facilities to save money, cut costs, and increase profits.

98. As a result of Wag's unfair conduct, Plaintiffs and the Class received inferior services than which they were promised. Wag did not have the policies or resources to provide a clean, safe, and attentive environment for customers' pets.

99. Wag's conduct provided no utility to Plaintiffs and Class members. Rather, Wag could and should have chosen one of the many reasonably available alternatives, including providing adequate staffing, training, and resources to maintain a safe and sanitary environment for the pets under its care.

100. Pursuant to Business and Professions Code Section 17200 *et seq.*, Wag's conduct constitutes "unfair" competition. Plaintiffs and the Class seek restitution and equitable relief, including a public injunction to reform Wag's safety and sanitation practices to conform with industry standards and state and local laws.

SCHUBERT JONCKHEER & KOLBE LLP
2001 Union Street, Suite 200
San Francisco, CA 94123
(415) 788-4220

SCHUBERT JONCKHEER & KOLBE LLP
2001 Union Street, Suite 200
San Francisco, CA 94123
(415) 788-4220

**THIRD CLAIM FOR RELIEF**
**Violation of the "Unlawful" Prong of the California Unfair Competition Law**
**Cal. Bus. & Prof. Code §§ 17200 *et seq.***
***On Behalf of Plaintiffs and the Class***

101. Plaintiffs, individually and on behalf of the Class, incorporate by reference all the allegations contained in the preceding paragraphs of this Class Action Complaint as if fully set forth herein. Plaintiffs bring this claim individually and on behalf of the Class against Wag. Wag's conduct as alleged in this complaint comprises unlawful conduct within the meaning of the California Unfair Competition Law.

102. The UCL is a California statute that protects consumers against unlawful, unfair, misleading, and fraudulent business and advertising practices.

103. Wag's actions as alleged herein constitute an "unlawful" practice within the definition, meaning, and construction of California's UCL because Wag violated California's strong consumer protection and false advertising laws, including California's False Advertising Law (Bus. & Prof. Code §§ 17500 *et seq.*) and the CLRA (Civ. Code §§ 1750 *et seq.*).

104. Wag's conduct also violates Chapter 11 of the California Health & Safety Code, which establishes standards for pet boarding facilities operating in California and imposes obligations on such companies to maintain safe and sanitary facilities.

105. Wag's conduct violates numerous local ordinances in California governing the standards for commercial boarding facilities, including San Mateo County, California, Municipal Code § 6.20.060; Los Angeles County, California, Municipal Code § 10.40.010; Santa Clara County, California, Municipal Code § 6.35.030; Sacramento County, California, Municipal Code § 8.26.075; and Alameda County, California, Municipal Code § 5.24.120.

106. As a result of Wag's unlawful conduct, Plaintiffs and the Class received inferior services than which they were promised. Wag did not have the policies or resources to provide a clean, safe, and attentive environment for customers' pets.

107. Pursuant to Business and Professions Code Section 17200 *et seq.*, Wag's conduct constitutes "unlawful" competition. Plaintiffs and the Class seek restitution and equitable relief, including a public injunction to reform Wag's safety and sanitation practices to conform with industry standards and state and local laws.

SCHUBERT JONCKHEER & KOLBE LLP
2001 Union Street, Suite 200
San Francisco, CA 94123
(415) 788-4220

**FOURTH CLAIM FOR RELIEF**
**Violation of the "Fraudulent" Prong of The California Unfair Competition Law**
**Cal. Bus. & Prof. Code §§ 17200 *et seq.***
***On Behalf of Plaintiffs and the Class***

108. Plaintiffs, individually and on behalf of the Class, incorporate by reference all the allegations contained in the preceding paragraphs of this Class Action Complaint as if fully set forth herein. Plaintiffs bring this claim individually and on behalf of the Class against Wag. Wag's conduct as alleged in this complaint comprises fraudulent conduct within the meaning of the California Unfair Competition Law.

109. The UCL is a California statute that protects consumers against unlawful, unfair, misleading, and fraudulent business and advertising practices.

110. Wag's actions as alleged herein constitute a "fraudulent" practice because, by making false and misleading representations about its dedication to pet welfare, Wag's conduct was likely to deceive, and did deceive, reasonable consumers into purchasing Wag's services and trusting Wag to care for their pets.

111. As a result of Wag's fraudulent conduct, Plaintiffs and the Class received inferior services than which they were promised. Wag did not have the policies or resources to provide a clean, safe, and attentive environment for customers' pets, and the company's pet welfare representations were the sole reason consumers initially purchased and continued to purchase Wag's services.

112. Pursuant to Business and Professions Code Section 17200 *et seq.*, Wag's deceitful business practices constitute "unfair" competition. Plaintiffs and the Class seek restitution and equitable relief, including a public injunction to reform Wag's safety and sanitation practices to conform with industry standards and state and local laws and changes and disclosures to Wag's advertising to the public.

**FIFTH CLAIM FOR RELIEF**
**Violations of the California False Advertising Law**
**Cal. Bus. & Prof. Code §§ 17500 *et seq.***
***On Behalf of Plaintiffs and the Class***

113. Plaintiffs, individually and on behalf of the Class, incorporate by reference all the allegations contained in the preceding paragraphs of this Class Action Complaint as if fully set

SCHUBERT JONCKHEER & KOLBE LLP
2001 Union Street, Suite 200
San Francisco, CA 94123
(415) 788-4220

forth herein. Plaintiffs bring this claim individually and on behalf of the Class against Wag. Wag's conduct as alleged in this complaint comprises unlawful conduct within the meaning of the California False Advertising Law.

114. Wag engaged in the advertising and marketing alleged herein with the intent to directly or indirectly influence the sale of Wag's services to customers, including Plaintiffs.

115. Wag knew or should have known that its representations assuring consumers of its dedication to pet welfare were likely to deceive a reasonable consumer purchasing its services.

116. Wag's representations were false, misleading, and deceptive in violation of the California False Advertising Law.

117. Wag's deceitful business practices constitute false advertising. Plaintiffs and the Class to seek equitable relief under the California False Advertising Law. Plaintiffs and the Class seek restitution and equitable relief, including a public injunction to reform Wag's safety and sanitation practices to conform with industry standards and state and local laws and changes and disclosures to Wag's advertising to the public.

**SIXTH CLAIM FOR RELIEF**
**Violations of the Consumers Legal Remedies Act**
**Cal. Civ. Code §§ 1750 *et seq.***
***On Behalf of Plaintiffs and the Class***

118. Plaintiffs, individually and on behalf of the Class, incorporate by reference all the allegations contained in the preceding paragraphs of this Class Action Complaint as fully set forth herein.

119. Plaintiffs bring this claim individually and on behalf of the Class against Wag.

120. The Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code §§ 1750 *et seq.,* is a California statute enacted to protect consumers involved in a transaction against unfair and deceptive business practices.

121. Wag is a "person" under Cal. Civ. Code § 1761(c).

122. Plaintiffs and the Class are "consumers" under Cal. Civ. Code § 1761(d).

123. Wag's acts and practices were intended to and did result in the sale of pet boarding services to Plaintiffs and Class members in violation of Cal. Civ. Code § 1770, including:

SCHUBERT JONCKHEER & KOLBE LLP
2001 Union Street, Suite 200
San Francisco, CA 94123
(415) 788-4220

a) Representing that goods or services have characteristics that they do not have;

b) Representing that goods or services are of a particular standard, quality, or grade when they were not;

c) Advertising goods or services with intent not to sell them as advertised; and

d) Representing that the subject of a transaction has been supplied in accordance with a previous representation when it has not.

124. Wag's representations and omissions were material because they were likely to deceive reasonable consumers about the adequacy of safety and sanitation practices for pets.

125. Wag intentionally provided Plaintiffs and the Class with products containing misrepresentations related to the company's practices concerning sanitation, safety, and pet welfare.

126. Plaintiffs and the Class relied on Wag's representations in purchasing the company's services.

127. As a result of Wag's conduct, Plaintiffs and the Class received an inferior service from that which they were promised.

128. Plaintiffs, individually and on behalf of the Class, demand judgment against Wag under the CLRA for declaratory and injunctive relief.

129. Plaintiffs, on behalf of themselves and the Class, further seek an order enjoining Wag's unfair or deceptive acts and practices, court costs, and attorneys' fees under Cal. Civ. Code § 1780(e).

130. Pursuant to Cal. Civ. Code § 1782(a), Plaintiffs will serve Defendant with notice of its alleged violations of the CLRA by certified mail return receipt requested. If, within thirty days after the date of such notification, Defendant fails to provide appropriate relief for its violations of the CLRA, Plaintiffs will amend this Class Action Complaint to seek monetary damages.

131. Notwithstanding any other statements in this Class Action Complaint, Plaintiffs do not seek monetary damages in conjunction with their CLRA claim—and will not do so—until this thirty- day period has passed.

SCHUBERT JONCKHEER & KOLBE LLP
2001 Union Street, Suite 200
San Francisco, CA 94123
(415) 788-4220

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, on behalf of themselves and the Class, request that the Court order the following relief and enter judgment against Wag as follows:

A. An Order certifying the proposed Class under Cal. Civ. Code § 382;

B. An Order appointing Plaintiffs and their counsel to represent the Class;

C. A declaration that Wag engaged in the illegal conduct alleged herein;

D. An Order that Wag be permanently enjoined from its improper activities and conduct described herein and directing Wag to comply with state and local laws governing animal welfare;

E. An order awarding Plaintiffs restitution and compensatory, consequential, and general damages, including nominal damages as appropriate, as allowed by law in an amount to be determined at trial;

F. An order awarding punitive damages as allowed by law in an amount to be determined at trial;

G. An Order awarding Plaintiffs and the Class reasonable litigation expenses, costs, and attorneys' fees;

H. An Order awarding such other injunctive and declaratory relief as is necessary to protect the interests of Plaintiffs and the Class; and

I. An Order awarding such other and further relief as the Court deems necessary, just, and proper.

**JURY DEMAND**

Plaintiffs hereby demand a trial by jury for all claims and issues so triable.

SCHUBERT JONCKHEER & KOLBE LLP
2001 Union Street, Suite 200
San Francisco, CA 94123
(415) 788-4220

Dated: December 22, 2023

/s/ Amber L. Schubert

ROBERT C. SCHUBERT (No. 62684)
AMBER L. SCHUBERT (No. 278696)
**SCHUBERT JONCKHEER & KOLBE LLP**
2001 Union Street, Suite 200
San Francisco, California 94123
Telephone: (415) 788-4220
Facsimile: (415) 788-0161
E-mail: rschubert@sjk.law
aschubert@sjk.law

*Counsel for Plaintiffs*